**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3124
_____

RHONDA H. WILSON; THE LAW OFFICES OF RHONDA
HILL WILSON, P.C.,
                                        Appellants

v.

USI INSURANCE SERVICE LLC; HARTFORD
CASUALTY INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03384)
District Judge:  Honorable Eduardo C. Robreno
_____

No. 20-3501
_____

TOPPERS SALON & HEALTH SPA, INC.,
                                        Appellant

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF
AMERICA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03342)
District Judge:  Honorable Joshua D. Wolson

_____

No. 20-3594

_____

4431, INC.; 4431 ASSOC., LP; 3354 WALBERT ASSOC.,
LP; 3354 WALBERT AVENUE ASSOCIATES, LLC;
BLUE GRILLE HOUSE AND WINE BAR; 4131
ASSOCIATES CANDLELIGHT INN; 2960 CENTER
VALLEY PARKWAY, LLC;
3739 WEST CHESTER PIKE, LLC; MELT RESTAURANT
GROUP, LLC; PAXOS RESTAURANTS, INC.; MELT
REAL ESTATE GROUP, LP; TOP CUT STEAKHOUSE,
                                    Appellants

v.

CINCINNATI INSURANCE COMPANIES;
CINCINNATI INSURANCE COMPANY;
CINCINNATI CASUALTY COMPANY;
CINCINNATI INDEMNITY COMPANY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

2

(D.C. No. 5:20-cv-04396)
District Judge:  Honorable Joseph F. Leeson, Junior

———————

No. 21-1038

———————

LH DINING L.L.C., d/b/a River Twice Restaurant,
                                                            Appellant

v.

ADMIRAL INDEMNITY COMPANY

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-01869)
District Judge:  Honorable Timothy J. Savage

———————

No. 21-1039

———————

NEWCHOPS RESTAURANT COMCAST LLC,
d/b/a CHOPS,
                                                            Appellant

v.

ADMIRAL INDEMNITY COMPANY

———————

3

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. No 2:20-cv-01949)
District Judge: Honorable Timothy J. Savage

_____

No. 21-1061

_____

BOULEVARD CARROLL ENTERTAINMENT GROUP,
INC.,

Appellant

v.

FIREMAN'S FUND INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-11771)
District Judge: Honorable Susan D. Wigenton

_____

No. 21-1106

_____

ADRIAN MOODY; ROBIN JONES,
d/b/a Moody Jones Gallery,

Appellants

v.

4

TWIN CITY FIRE INSURANCE COMPANY

––––––––––––

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-02856)
District Judge:  Honorable Chad F. Kenney

––––––––––––

No. 21-1107

––––––––––––

ATCM OPTICAL, INC; OMEGA OPTICAL, INC;
OMEGA OPTICAL AT COMCAST CENTER LLC,
d/b/a OMEGA Optical,

Appellants

v.

TWIN CITY FIRE INSURANCE COMPANY

––––––––––––

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-04238)
District Judge:  Honorable Chad F. Kenney

––––––––––––

No. 21-1109

––––––––––––

1 S.A.N.T., INC.,

Appellant

5

v.

NATIONAL FIRE & MARINE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cv-00862)
District Judge:  Honorable William S. Stickman, IV

_____

No. 21-1175

_____

INDEPENDENCE RESTAURANT GROUP, LLC
on behalf of itself and all others similarly situated
d/b/a Independence Beer Garden,
                                         Appellant

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-02365)
District Judge:  Honorable Chad F. Kenney

_____

No. 21-1240

_____

ULTIMATE HEARING SOLUTIONS II, LLC;
ULTIMATE HEARING SOLUTIONS III, LLC;
ULTIMATE HEARING SOLUTIONS IV, LLC;
ULTIMATE HEARING SOLUTIONS V, LLC;
ULTIMATE HEARING SOLUTIONS VI, LLC,
                                    Appellants

v.

TWIN CITY FIRE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-02401)
District Judge:  Honorable Chad F. Kenney
_____

No. 21-1294
_____

WHISKEY FLATS INC.,
T/A Out of Wack Jack's Bar & Grill,
                                    Appellant

v.

AXIS INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03451)

District Judge:  Honorable Chad F. Kenney

_____

No. 21-1315

_____

THE EYE CARE CENTER OF NEW JERSEY, PA, on
behalf of itself and all others similarly situated,
                                                            Appellant

v.

TWIN CITY FIRE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-05743)
District Judge:  Honorable Kevin McNulty

_____

No. 21-1414

_____

IN THE PARK SAVOY CATERERS LLC, t/a The Park
Savoy; IN THE PARK CHATEAU CATERERS LLC, on
behalf of itself and all others similarly situated,
                                                            Appellants
v.

SELECTIVE INSURANCE GROUP INC.; SELECTIVE
CASUALTY INSURANCE COMPANY

_____

8

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-06869)
District Judge:  Honorable Madeline C. Arleo

————————

Argued:  September 28, 2022

————————

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, McKEE[*], and PORTER,
<u>Circuit</u> <u>Judges</u>

(Opinion filed: January 6, 2023)

————————

Rhonda H. Wilson
8 Penn Center
1628 John F. Kennedy Boulevard, Suite 400
Philadelphia, PA 19103
        *Counsel for Appellants in No. 20-3124*

Daniel J. Dugan [ARGUED]
Neal R. Troum
Spector Gadon Rosen & Vinci
1635 Market Street, 7th Floor
Philadelphia, PA 19103
        *Counsel for Appellant in No. 20-3501*

Robert A. Freedberg
Christian M. Perrucci [ARGUED]

————————

[*] Judge McKee assumed senior status on October 21, 2022.

Florio Perrucci Steinhardt Cappelli Tipton & Taylor
91 Larry Holmes Drive, Suite 200
Easton, PA 18042
*Counsel for Appellant in No. 20-3594*

Walter J. Andrews [ARGUED]
Hunton Andrews Kurth
333 Southeast 2 Avenue, Suite 2400
Miami, FL 33131

Scott P. DeVries
Hunton Andrews Kurth
50 California Street, Suite 1700
San Francisco, CA 94111

Michael S. Levine
Hunton Andrews Kurth
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037

Elbert Lin
Hunton Andrews Kurth
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, VA 23219

John R. Sawyer
Stark & Stark
993 Lenox Drive
Lawrenceville, NJ 08648

Kevin V. Small

Hunton Andrews Kurth
200 Park Avenue
52nd Floor
New York, NY 10166
    *Counsel for Appellant in No. 21-1061*

Laurence S. Berman
Arnold Levin
Daniel C. Levin
Frederick S. Longer
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
    *Counsel for Appellants in Nos. 21-1106, 21-1107, 21-1038, 21-1039 & 21-1294*

Kenneth J. Grunfeld
Golomb Spirt Grunfeld
1835 Market Street, Suite 2900
Philadelphia, PA 19103
    *Counsel for Appellants in Nos. 21-1106, 21-1107, 21-1294, 21-1038 & 21-1039*

Richard M. Golomb
Golomb Spirt Grunfeld
1835 Market Street, Suite 2900
Philadelphia, PA 19103
    *Counsel for Appellants in Nos. 21-1038, 21-1039 & 21-1294*

Wilson D. Miles, III
Rachel N. Minder

Beasley Allen Crow Methvin Portis & Miles
218 Commerce Street
Montgomery, AL 36104
    *Counsel for Appellant in 21-1294, 21-1106 & 21-1107*

Paul W. Evans
Beasley Allen Crow Methvin Portis & Miles
218 Commerce Street
Montgomery, AL 36104
    *Counsel for Appellant in 21-1294*

R. Bruce Carlson
Carlson Brown
222 Broad Street
P.O. Box 242
Sewickley, PA 15143

Ted A. Hages
Matthew Louik
James C. Martin [ARGUED]
Devin M. Misour
George L. Stewart, II
Colin E. Wrabley
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Kelly K. Iverson
Gary F. Lynch
Lynch Carpenter
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
    *Counsel for Appellant in No. 21-1109*

Alan M. Feldman
Edward S. Goldis
Daniel J. Mann
Andrew K. Mitnick
Bethany R. Nikitenko
Feldman Shepherd Wohlgelernter Tanner Weinstock &
Dodig
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

James A. Francis
David A. Searles
John Soumilas
Francis Mailman Soumilas
1600 Market Street, Suite 2510
Philadelphia, PA 19103
        *Counsel for Appellant in No. 21-1175*

Alan C. Milstein
Sherman Silverstein Kohl Rose & Podolsky
308 Harper Drive
Suite 200, Eastgate Corporate Center
Moorestown, NJ 08057
        *Counsel for Appellants in No. 21-1240*

James E. Cecchi
Brian F. O'Toole [ARGUED]
Lindsey H. Taylor
Carella Byrne Cecchi Olstein Brody & Agnello
5 Becker Farm Road
Roseland, NJ 07068

Christopher A. Seeger

Seeger Weiss
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
    *Counsel for Appellants in Nos. 21-1414 & 21-1315*

Paul J. Geller
Robbins Geller Rudman & Dowd
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432

Samuel H. Rudman
Robbins Geller Rudman & Dowd
58 South Service Road, Suite 200
Melville, NY 11747
    *Counsel for Appellant in No. 21-1315*

Bethany Barrese
Saxe Doernberger & Vita
233 Mount Airy Road
Basking Ridge, NJ 07920

Brian J. Clifford
Janie A. Eddy
Saxe Doernberger & Vita
35 Nutmeg Drive, Suite 140
Trumbull, CT 06611

Gregory D. Podolak
Saxe Doernberger & Vita
999 Vanderbilt Beach Road, Suite 603
Naples, FL 34108
    *Counsel for Amicus Appellant Saxe Doernberger*
    *& Vita PC*

Gabriel K. Gillett
Jenner & Block
353 North Clark Street, Suite 4500
Chicago, IL 60654
*Counsel for Amici Appellants Pennsylvania Restaurant & Lodging Association and Restaurant Law Center in Nos. 20-3124, 21-1038, 21-1039, 21-1106, 21-1107, 21-1109, 21-1175, 21-1240 & 21-1294*

Lisa M. Campisi
Blank Rome
1271 Avenue of the Americas
New York, NY 10020

Charles A. Fitzpatrick, IV
Blank Rome
130 North 18th Street
One Logan Square
Philadelphia, PA 19103
*Counsel for Amicus Appellant United Policyholders Nos. 21-1038, 21-1039, 21-1106, 21-1107, 21-1109 & 21-1294*

Nicholas M. Insua
Reed Smith
599 Lexington Avenue, 22nd Floor
New York, NY 10022
*Counsel for Amicus Appellant United Policyholders in No. 21-1061*

Christopher P. Leise
White & Williams
457 Haddonfield Road

Liberty View, Suite 400
Cherry Hill, NJ 08002

Marc L. Penchansky
White & Williams
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
     *Counsel for Appellee USI Insurance Services LLC in*
     *No. 20-3124*

Wystan M. Ackerman
J. Tyler Butts
Gregory P. Varga
Robinson & Cole
280 Trumbull Street
One Commercial Plaza
Hartford, CT 06103
     *Counsel for Appellee in No. 20-3501*

Richard D. Gable, Jr.
Butler Weihmuller Katz Craig
1818 Market Street, Suite 2740
Philadelphia, PA 19103
     *Counsel for Appellee in Nos. 20-3501, 21-1106, 21-*
     *1107 & Appellee Hartford Casualty Insurance*
     *Company in No. 20-3124*

Jonathan M. Freiman
David R. Roth [ARGUED]
Wiggin & Dana
One Century Tower
265 Church Street

16

New Haven, CT 06510
*Counsel for Appellee in Nos. 21-1240, 21-1106, 21-1107, 21-1315 & Appellee Hartford Casualty Insurance Company in No. 20-3124*

Sarah D. Gordon
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
*Counsel for Appellee in Nos. 21-1315, No. 21-1240, 21-1106, 21-1107 & Appellee Hartford Casualty Insurance Company in No. 20-3124*

James L. Brochin
Steptoe & Johnson
1114 Avenue of the Americas, 35th Floor
New York, NY 10036

Ryan M. Chabot
Alan E. Schoenfeld
Wilmer Cutler Pickering Hale & Dorr
7 World Trade Center
250 Greenwich Street
New York, NY 10007
*Counsel for Appellee in No. 21-1315*

John J. Kavanagh
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
*Counsel for Appellee in Nos. 21-1106, 21-1107, 21-1240 & Appellee Hartford Casualty Insurance Company in No. 20-3124*

17

Caitlin R. Tharp
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
*Counsel for Appellee in No. 21-1240*

Alan I. Becker
Daniel G. Litchfield
Laurence J. W. Tooth
Litchfield Cavo
303 West Madison Street, Suite 303
Chicago, IL 60606
*Counsel for Appellees in No. 20-3594*

Eric A. Fitzgerald
Hillary Ladov
McAngus Goudelock & Courie
P.O. Box 12519
Columbia, SC 29211

Antonia B. Ianniello
John F. O'Connor, Jr.
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
*Counsel for Appellees in Nos. 21-1038 & 21-1039*

Michael D. Hynes
DLA Piper
1251 Avenue of the Americas, 27th Floor
New York, NY 10020

Brett D. Solberg

DLA Piper
845 Texas Avenue, Suite 3800
Houston, TX 77002
        *Counsel for Appellee in No. 21-1061*

Robert L. Byer
Julie S. Greenberg
Duane Morris
625 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222

Damon Vocke
Duane Morris
1540 Broadway
New York, NY 10036
        *Counsel for Appellee in No. 21-1109*

Fred L. Alvarez
David E. Walker
Walker Wilcox Matousek
One North Franklin Street, Suite 3200
Chicago, IL 60606
Paul L. Fields, Jr.
Fields Howell
665 8th Street, N.W.
Atlanta, GA 30318

Marc R. Kamin
Michael J. Smith
Stewart Smith
300 Conshohocken State Road
300 Four Falls Corporate Center, Suite 670
West Conshohocken, PA 19428

Gregory L. Mast
Fields Howell
665 8th Street, N.W.
Atlanta, GA 30318
 *Counsel for Appellee in No. 21-1175*

Michael E. DiFebbo, Jr.
Elizabeth A. Sutton
Kennedys CMK
1600 Market Street, Suite 1410
Philadelphia, PA 19103

Kristin V. Gallagher
Kennedys CMK
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920

Francis X. Simpson, III
Fowler Hirtzel McNulty & Spaulding
1717 Arch Street, Suite 1310
Philadelphia, PA 19103
 *Counsel for Appellee in 21-1294*

Laura A. Brady
William T. Corbett, Jr.
Coughlin Midlige & Garland
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962

Kenneth J. Brown
Amy M. Saharia

Williams & Connolly
680 Maine Avenue, S.W.
Washington, DC 20024
    *Counsel for Appellees in 21-1414*

Laura A. Foggan
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
    *Counsel for Amici Appellees American Property*
    *Casualty Insurance Association and National*
    *Association of Mutual Insurance Companies*

_____

OPINION OF THE COURT
_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

The plaintiffs in this consolidated appeal are businesses (collectively, the "businesses") that closed or significantly limited their operations in March 2020 after the governors of the states in which they operate issued orders to curb the spread of the coronavirus and the disease it causes, COVID-19. To recover the resultant losses, the businesses filed claims under their respective commercial property insurance policies (the "policies"). Their insurers universally denied coverage, reasoning that the businesses did not suffer a "physical loss of or damage to" property necessary to trigger coverage or that a "virus exclusion" applied and barred coverage.

The businesses then filed lawsuits against their insurers to enforce coverage, arguing that their loss of the ability to use

their properties for the properties' intended business purposes is a "physical loss of" property and that no exclusions bar coverage, either because the exclusions do not apply or because the insurers are estopped from arguing that they do. The insurers filed dispositive motions, and the respective District Courts all found for the insurers. The businesses appealed.

We predict how the Supreme Courts of Pennsylvania and New Jersey would decide the issues before us and hold that the loss of use of a property's intended business purpose is not a physical loss of property covered by the businesses' insurance policies. Because the policies do not cover the businesses' losses, we need not reach the issue of whether the virus exclusions or any other exclusions apply. We will therefore affirm the judgments and orders of the District Courts.

I.

The plaintiffs are businesses in Pennsylvania, New Jersey, New York, Maryland, and Delaware in the food service, medical, health and wellness, art, music, and legal sectors. In March 2020, to curb the spread of COVID-19, the governors of each of those states issued executive orders closing or restricting the activities of nonessential businesses and urging people to stay home whenever possible (the "closure orders"). The businesses were forced to close or significantly limit their operations as a result. Restaurants had to stop on-premises dining and bar service, while medical providers could no longer perform non-emergent procedures. Some businesses that were considered wholly nonessential, such as fitness centers, had to close entirely.

To recover income lost as a result of the closure orders, the businesses filed claims with their respective insurers under their policies' business income, extra expense, and civil authority provisions. The business income provisions in the policies provide coverage for "the actual loss of Business Income" that the businesses sustain "due to the necessary 'suspension' of [their] 'operations' during the 'period of restoration,'" when the "suspension [is] caused by direct physical loss of or damage to" the property and the loss or damage is "caused by or resulting from a Covered Cause of Loss." Joint Consolidated Appendix ("J.A.") 493, 1198, 1615, 2006, 2272, 2811; Appellees' Supplemental App. ("S.A.") 37; Eye Care Joint Appendix ("E.C.J.A.") 96. See also J.A. 887, 1865; Toppers Joint Appendix ("Toppers App.") 55; In the Park Joint Appendix ("I.P.J.A.") 161, 351 (using materially similar language).[1] The extra expense provisions provide coverage for extra expenses that the businesses "incur during the 'period of restoration' that [they] would not have incurred if there had been no direct physical loss or damage" to the property, "caused by or resulting from a Covered Cause of Loss." J.A. 493–94, 887, 1865, 2006, 2811–12; Toppers App.

---

[1] While the policies are not all identical, we discern no material difference among them for the purpose of this dispute. For example, all the policies tie business income and extra expense coverage to the "period of restoration," and the business income provisions of all but two use identical "physical loss of or damage to" language. The two policies that do not use this language nevertheless also require physical loss, see Boulevard Carroll Joint Appendix ("B.C.A.") 65; 4431 Appendix ("4431 App.") 108–09, 128, and the minor differences in wording therefore do not change our analysis.

55–56. See also J.A. 1198–99, 1615, 2272–73; E.C.J.A. 96–97; S.A. 37; B.C.A. 65; 4431 App. 109; I.P.J.A. 161, 351 (using materially similar language). And the civil authority provisions cover losses caused when an "action of civil authority [] prohibits access to" the insured property due to physical loss or damage to property other than the insured premises, caused by "a Covered Cause of Loss." J.A. 494, 888, 1866, 2007, 2812; Toppers App. 56; 4431 App. 109. See also J.A. 1199, 1616, 2273; S.A. 38; E.C.J.A. 97; B.C.A. 77; I.P.J.A. 162, 352 (using materially similar language).[2]

The policies generally define covered cause of loss as "risks of direct physical loss" not otherwise excluded or limited. J.A. 505, 899, 1190, 1607, 1872, 1982, 2264; S.A. 29; Toppers App. 66; E.C.J.A. 88. See also J.A. 2767; B.C.A. 111; 4431 App. 95; I.P.J.A. 150, 340 (using materially similar language). The period of restoration is defined as the time beginning "with the date of direct physical loss or [] damage" and ending on the earlier of (1) the date when the property "should be repaired, rebuilt or replaced with reasonable speed and similar quality," or (2) the date the business "is resumed at a new, permanent location." J.A. 1212–13, 1629–30, 2286–87; S.A. 51–52; E.C.J.A. 110–11. See also J.A. 503, 897, 1871, 2013, 2819; B.C.A. 117; 4431 App. 128–29; Toppers

---

[2] There is more variance among the civil authority provisions, but each requires "physical loss," damage, or "physical loss of or damage to" another property and an action of civil authority prohibiting access to the insured premises because of that loss or damage. Because the businesses failed to allege or demonstrate physical loss or damage to their or any other properties, see infra Part III, those differences are immaterial to the present dispute.

24

App. 64–65; I.P.J.A. 139–40, 329–30 (using materially similar language, with some difference — immaterial to this dispute — as to when the period of restoration starts).

Most of the policies also contain some form of a so-called "virus exclusion" that excludes from coverage losses caused by or relating to a virus. J.A. 516, 910, 1887, 2766; Toppers App. 416; I.P.J.A. 136, 326; J.A. 293; 1284, 1703, 2367; E.C.J.A. 197; J.A. 2029, 2031; B.C.A. 66–67. Some policies also exclude "loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property" (the "ordinance or law exclusion"). J.A. 45–46.

The insurers universally denied the businesses' claims, and the businesses filed lawsuits in New Jersey and Pennsylvania courts to enforce coverage.[3] The insurers filed dispositive motions — to dismiss under Federal Rule of Civil Procedure 12(b)(6), for judgment on the pleadings under Rule 12(c), or for summary judgment under Rule 56 — which were granted by the District Courts. Most courts found that loss of use was not a "physical loss of" property within the meaning of the policies, 4431 App. 22–23; J.A. 91, 118, 138, 159–60, 182, 209–10; some reasoned that the policies required physical damage to covered property, Toppers App. 646–47; B.C.A 5; J.A. 44; and others found that even if there were coverage, a virus exclusion barred the businesses' claims, J.A. 22–24; I.P.J.A. 6, E.C.J.A. 10. The businesses timely appealed. This Court then consolidated these fourteen appeals, given the similarities among them.

---

[3] Most cases were initiated in federal court, while some were initiated in state court and then removed to federal court.

## II.

The District Courts had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Courts' grant of the insurers' dispositive motions de novo, Watters v. Bd. of Sch. Dirs. of City of Scranton, 975 F.3d 406, 412 (3d Cir. 2020) (motion to dismiss); Prusky v. Reliastar Life Ins. Co., 445 F.3d 695, 699 (3d Cir. 2006) (summary judgment); Allah v. Al-Hafeez, 226 F.3d 247, 249 (3d Cir. 2000) (judgment on the pleadings), and may affirm on any ground supported by the record, Watters, 975 F.3d at 412. We also review de novo the District Courts' interpretations of state law. Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 162 (3d Cir. 2011).

We apply the same standard to motions to dismiss and for judgment on the pleadings, Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019): "we accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face,'" Watters, 975 F.3d at 412 (motion to dismiss) (quoting Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 105 (3d Cir. 2018)); see also Allah, 226 F.3d at 249 (judgment on the pleadings). We disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements. Oakwood Lab'ys LLC v. Thanoo, 999 F.3d 892, 904 (3d Cir. 2021). In reviewing a motion for summary judgment, we apply the same standard as the District Court, "[d]rawing all reasonable inferences in favor of the party against whom judgment is sought" and affirming the grant of the motion "only when no

26

issues of material fact exist and the party for whom judgment is entered is entitled to judgment as a matter of law." Prusky, 445 F.3d at 699. Because the businesses' claims arise under state law, we predict how the Supreme Courts of Pennsylvania and New Jersey would decide the issues before us.[4] Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1445 (3d Cir. 1996).

III.

The businesses challenge the District Courts' dismissals of their complaints and grants of judgments on the pleadings and summary judgment to the insurers. Central to this challenge is whether the businesses' inability to use their properties for their intended business purposes constitutes "physical loss of" property as that phrase is used in the policies. Predicting how the Supreme Courts of Pennsylvania and New Jersey would decide this issue and following our decision in Port Authority of New York and New Jersey v. Affiliated FM Insurance Company, 311 F.3d 226 (3d Cir. 2002), we hold that it does not.

Under both Pennsylvania and New Jersey law, our role in interpreting an insurance policy is to "ascertain the intent of the parties as manifested by the language of the written instrument." Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011) (quotation marks omitted) (applying Pennsylvania law); Manahawkin Convalescent v. O'Neill, 85 A.3d 947, 958 (N.J. 2014). We read the policy as a whole and in accordance with the plain and ordinary meaning

---

[4] The parties agree that Pennsylvania and New Jersey law applies to this appeal, as do we.

of its terms.  Am. Auto. Ins. Co., 658 F.3d at 320; Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 143 A.3d 273, 280 (N.J. 2016).

Where the policy language is clear and unambiguous, we must enforce that language as written.  Am. Auto. Ins. Co., 658 F.3d at 321; Cypress Point Condo. Ass'n, 143 A.3d at 280.  Language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986); see also Cypress Point Condo. Ass'n, 143 A.3d at 280.  Ambiguous provisions in an insurance policy must be construed in favor of the insured and against the insurer.  Med. Protective Co. v. Watkins, 198 F.3d 100, 104 (3d Cir. 1999) (applying Pennsylvania law); Flomerfelt v. Cardiello, 997 A.2d 991, 996 (N.J. 2010).  Whether policy language is ambiguous "is not a question to be resolved in a vacuum."  Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).  Rather, terms of an insurance policy are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts."  Id.; see also Cypress Point Condo. Ass'n, 143 A.3d at 280.  Courts will not, however, "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."  Madison Constr. Co., 735 A.2d at 106.  And if possible, "a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions."  Am. Auto. Ins. Co. Auto., 658 F.3d at 321.

To state a successful claim for coverage under an insurance policy, an insured must first make a prima facie showing that its claim falls within the policy's grant of coverage.  See State Farm Fire & Cas. Co. v. Est. of Mehlman,

28

589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law); Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 483 A.2d 402, 408 (N.J. 1984). The insurer then bears the burden to demonstrate that a policy exclusion applies. State Farm Fire & Cas. Co., 589 F.3d at 111; Hartford Accident & Indem. Co., 483 A.2d at 409. "[E]xclusions are always strictly construed against the insurer and in favor of the insured." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206–07 (3d Cir. 2001) (applying Pennsylvania law); see also Villa v. Short, 947 A.2d 1217, 1222 (N.J. 2008). If an exclusion applies, the insured then bears the burden to show an exception to that exclusion applies to restore coverage. Cypress Point Condo. Ass'n, 143 A.3d at 286 (applying New Jersey law); N. Ins. Co. of N.Y. v. Aardvark Assocs., Inc., 942 F.2d 189, 195 (3d Cir. 1991) (applying Pennsylvania law).

We begin our analysis, therefore, considering whether the businesses demonstrated that their claims fall within the policies' grant of coverage, starting with the business income and extra expense provisions.

A.

To establish coverage under the business income and extra expense provisions,[5] the businesses must show that their operations were suspended because of "direct physical loss of

---

[5] The policies' extra expense provisions require "direct physical loss or damage to property," while the business income provisions generally require "direct physical loss of or damage to property." Because we discern no material difference between these two formulations, we analyze the business income and extra expense provisions together.

29

or damage to" the properties. The businesses argue that the loss of their ability to use their properties for their intended business purposes constitutes "physical loss of" the properties. We disagree.

1.

The policies do not define the phrase "physical loss of or damage," so we start with the plain meaning of the text. Loss means the failure to keep or maintain possession or "the state or fact of being destroyed." Loss, MERRIAM WEBSTER-UNABRIDGED DICTIONARY ONLINE, https://unabridged.merriam-webster.com/unabridged/loss (last visited Oct. 13, 2022); see also Loss, BLACK'S LAW DICTIONARY (11th ed. 2019). Damage means "injury or harm to . . . property." Damage, MERRIAM WEBSTER-UNABRIDGED DICTIONARY ONLINE, https://unabridged.merriam-webster.com/unabridged/damage (last visited Oct. 13, 2022). Under the plain language of the policies, the loss or damage must be physical, which means "natural[,] tangible, concrete," Physical, OXFORD ENGLISH DICTIONARY ONLINE, https://www.oed.com/view/Entry/143120?rskey=DAEbpp&result=2#eid (last visited Oct. 13, 2022), and "[o]f or relating to, or involving material things; pertaining to real, tangible objects," Physical, BLACK'S LAW DICTIONARY (11th ed. 2019).

Physical damage to property therefore typically means "'a distinct, demonstrable, and physical alteration' of its structure." Port Auth. of N.Y. & N.J., 311 F.3d at 235 (quoting 10 Couch on Ins. § 148.46 (3d ed. 1998)). And physical loss of property means a failure to maintain tangible possession of the structure.

30

In Port Authority, however, we explained that "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." Id. We held that in the case of asbestos contamination, physical loss or damage to property occurred

> only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility.

Id. at 236 (emphasis added).

We applied New Jersey and New York law in Port Authority, but nothing unique about those states' laws dictated the result. For that reason, and because there is no substantive law in Pennsylvania at odds with our decision, we predict that the Supreme Court of Pennsylvania would adopt a similar principle as Port Authority and hold that Port Authority applies in a case where sources unnoticeable to the naked eye — here, the coronavirus and resultant closure orders — have allegedly reduced the use of the property to a substantial degree. This standard ensures that an insured will have lost tangible possession of property sufficient to constitute physical loss or damage. The businesses therefore must show that the functionalities of their properties were nearly eliminated or destroyed, that the structures were made useless or

31

uninhabitable, or that there was an imminent risk of either of those things happening.

The businesses argue that their loss of the ability to use their properties for their intended business purposes meets this standard. We disagree. The businesses' argument is completely divorced from the physical condition of the premises. The businesses lost the ability to use their properties for their intended business purposes because the governors of the states in which they operate issued orders closing or limiting the activities of nonessential businesses, not because there was anything wrong with their properties. The properties were not destroyed in whole or in part; their structures remained intact and functional.

Regardless, the loss of the ability to use property in certain ways does not render the properties useless or uninhabitable. The properties could certainly be used or inhabited, just not in the way the businesses would have liked. Restaurants remained open for carry out, and medical providers could perform emergency procedures. While we recognize that some wholly nonessential businesses, such as Toppers Salon & Health Spa, Inc. ("Toppers"), had to close entirely for a time, again, that closure and resultant loss of use was due entirely to the closure orders and had nothing to do with the physical condition of the premises. No one was "physically restrained" from entering the businesses' properties, as counsel for Toppers suggested during oral argument. The closure orders simply prohibited the businesses from using their properties in certain ways.

At bottom, loss of use caused by government edict and untethered to the physical condition of the premises is not a

physical loss or damage to the properties.  We therefore hold that loss of use of intended purpose under the circumstances presented here is not a physical loss of property within the meaning of the policies.[6]

Other terms in the policies support our conclusion that loss of use must involve some physicality.  For instance,

---

[6] We consider this appeal entirely on its own merits but note that every other Court of Appeals and all but one state supreme court to have considered this issue also has held that loss of use caused by closure orders issued in response to the COVID-19 pandemic does not constitute physical loss or damage sufficient to trigger property insurance coverage.  See Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29 (1st Cir. 2022); 10012 Holdings, Inc. v. Sentinel Ins. Co., 21 F.4th 216 (2d Cir. 2021); Uncork & Create LLC v. Cincinnati Ins. Co., 27 F.4th 926 (4th Cir. 2022); Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co., 22 F.4th 450 (5th Cir. 2022); Santo's Italian Café LLC v. Acuity Ins. Co., 15 F.4th 398 (6th Cir. 2021); Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327 (7th Cir. 2021); Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141 (8th Cir. 2021); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885 (9th Cir. 2021); Goodwill Indus. of Central Okla., Inc. v. Phila. Indem. Ins. Co., 21 F.4th 704 (10th Cir. 2021); Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co., No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021); Wakonda Club v. Selective Ins. Co. of Am., 973 N.W.2d 545 (Iowa 2022); Tapestry, Inc. v. Factory Mut. Ins. Co., No. 1 Sept. Term, 2022, 2022 WL 17685594 (Md. Dec. 15, 2022); Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266 (Mass. 2022); Neuro-Commc'n Servs., Inc. v. Cincinnati Ins. Co., No. 2021-0130, 2020 WL

33

coverage exists only during the "period of restoration," which ends when the property should be "repaired, rebuilt or replaced" or is moved to a new location. As Toppers conceded during oral argument, there is nothing to repair, rebuild, or replace in any of these cases. The businesses' loss of use would be — and was — cured by an end to the closure orders, and not by the rebuilding or repairing of any property. We must read the policies as a whole and give effect to the whole policy, including the "period of restoration" language. See USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 200 (3d Cir. 2006) ("Pennsylvania courts long have admonished that 'contract terms will not be construed in such a manner so as to render them meaningless,' and we decline to do so here." (citation omitted)); Cypress Point Condo. Ass'n, 143 A.3d at 280 ("The court's responsibility [under New Jersey law] is to give effect to the whole policy, not just one part of it." (quotation marks omitted)). The businesses' proposed

17573883 (Ohio Dec. 12, 2022); Cherokee Nation v. Lexington Ins. Co., No. 119,359, 2022 WL 4138429 (Okla. Sept. 13, 2022); Sullivan Mgmt., LLC v. Fireman's Fund Ins. Co., No. 2021-001209, 2022 WL 3221920 (S.C. Aug. 10, 2022); Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co., 515 P.3d 525 (Wash. 2022) (en banc); Colectivo Coffee Roasters, Inc. v. Soc'y Ins., 974 N.W.2d 442 (Wis. 2022); but see Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co., No. 2021-173, 2022 WL 4396475, at *11 (Vt. Sept. 23, 2022) (holding that a complaint that alleged COVID-19 adhered to and altered property survived judgment on the pleadings under Vermont's "extremely liberal" pleading standard).

34

interpretation of physical loss or damage would render the "period of restoration" language superfluous.

Recent decisions from the Superior Court of New Jersey, Appellate Division, also support our conclusion that the businesses did not suffer physical loss or damage. In three cases like those before us, the Appellate Division determined that loss of use caused by New Jersey's closure orders did not constitute physical loss or damage under commercial property insurance policies. See Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 278 A.3d 272 (N.J. Super. Ct. App. Div. 2022); AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., No. A-1824-21, 2022 WL 2254864 (N.J. Super. Ct. App. Div. June 23, 2022); Rockleigh Country Club, LLC v. Hartford Ins. Grp., No. A-1826-21, 2022 WL 2204374 (N.J. Super. Ct. App. Div. June 21, 2022). Those decisions are a strong indicator of how the Supreme Court of New Jersey would decide the issues before us, see Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007), and therefore reinforce our conclusion that there is no business income or extra expense coverage here.[7]

---

[7] The Superior Court of Pennsylvania has issued two decisions addressing whether property insurance provides coverage for losses incurred under circumstances similar to those here. The court in MacMiles, LLC v. Erie Ins. Exch., No. 1100 WDA 2021, 2022 WL 17332910, at *4 (Pa. Super. Ct. Nov. 30, 2022), held that there was no coverage for loss of use of a commercial property unaccompanied by any physical alteration or other physical condition that rendered the property unusable or uninhabitable. The same panel in Ungarean v. CAN, Nos. 490 WDA 2021, 948 WDA 2021, 2022 WL

2.

The businesses make several counterarguments, none of which are availing.

First, the businesses argue that because the policies cover "physical loss of <u>or</u> damage to property," loss must mean something other than damage. We agree, but that does not change our holding. There can be physical loss without damage, such as the case of a landslide "leaving [a] home standing on the edge of and partially overhanging a newly-formed 30-foot cliff" without physically damaging the structure itself, <u>see</u> <u>Hughes v. Potomac Ins. Co. of D.C.</u>, 199 Cal. App. 2d 239, 243, 248–49 (Cal. Dist. Ct. App. 1962), or "a portable grill or a delivery truck [being] stolen without a scratch," <u>Santo's Italian Café</u>, 15 F.4th at 404. We also agree

---

17334365, at *4–5, *10–11 (Pa. Super. Ct. Nov. 30, 2022), in contrast, determined that the policy at issue was ambiguous and held that the policy covered the insured's COVID-related business losses. The differing outcomes make these decisions a less useful measure in determining how the Supreme Court of Pennsylvania would decide the issues before us, especially because questions of insurance coverage are fact intensive inquiries that depend on the specific language of a policy. <u>See</u> <u>Ungarean</u>, 2022 WL 17334365, at *11; <u>MacMiles</u>, 2022 WL 17332910, at *8 (Panella, J. concurring). We nevertheless have carefully reviewed the reasoning of both decisions and predict that the Supreme Court of Pennsylvania, like the overwhelming majority of state and federal jurisdictions that have considered the issue, would determine that the policies here are unambiguous and do not cover the businesses' losses.

36

with the businesses that the definition of the term "loss" can include loss of use.  But it does not follow that every loss of use is necessarily a physical loss, and for the reasons explained above, there was no physical loss here.

One business, 1 S.A.N.T., Inc. ("1 S.A.N.T."), argues that under Port Authority, we must look to the functionality of the properties and, to do that, we must look to the properties' intended use.[8]  Our discussion of "utility" and "function" in Port Authority, however, was in the context of discussing the building or structure itself, not the purpose for which the structure is used.  See Port Auth. of N.Y. & N.J., 311 F.3d at 236 (explaining that loss requires that the "structure" be rendered "uninhabitable and unusable"; that the "form or quantity" of a contaminant must "make the building unusable"; and that there is no loss when the "structure continues to function." (emphasis added)).  When a structure's function is nearly eliminated or destroyed, or the property is rendered uninhabitable or unusable, the building itself is rendered completely (or almost completely) useless as a structure until there is remediation or relocation.  In other words, there is a complete (or near complete) dispossession of property, regardless of the purpose for which that property is used.  This operational utility is what we mean by functionality, not the intended business purpose at or within a property that is physically unaffected.

---

[8] Along the same lines, 1 S.A.N.T. argues that we must consider the businesses' intended business purposes because it is implicit in the policies.  Our role, however, is to interpret the language of the policies as written, and the businesses' intended purposes is nowhere in the text.

37

Several businesses similarly argue that the actual or suspected presence of the coronavirus on their premises rendered the properties unsafe and uninhabitable, comparing the coronavirus to contamination by noxious substances, such as ammonia or gasoline, which courts have determined to be covered under commercial insurance policies. Where courts have found that such a substance caused physical loss or damage, however, the substance was present to such a degree that it became physically dangerous to be inside of the building, rendering the building useless until there was some kind of remediation. See Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am., No. 2:12-cv-04418, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014) (finding "physical loss of or damage to" property where an ammonia release in a packaging facility "physically transformed the air . . . so that it contained an unsafe amount of ammonia or that the heightened ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated"); W. Fire Ins. Co. v. First Presbyterian Church, 437 P.2d 52, 55 (Colo. 1968) (holding that an accumulation of gasoline around a church constituted a "loss of use" when the building "became so infiltrated and saturated" with gasoline that it became "uninhabitable").

As we explained in Port Authority, the presence of a dangerous substance alone does not constitute a loss; there is no physical loss until the substance is "in such form or quantity as to make the building unusable." Port Auth. of N.Y. & N.J., 311 F.3d at 236; see also Western Fire, 437 P.2d at 55 ("[T]here was no direct physical loss sustained on, for example, the first day that gasoline actually seeped onto the insured's premises. To the contrary, no direct physical loss was incurred by the insured until the [a]ccumulation of gasoline under and around the church [b]uilt up to the point

38

that there was such infiltration and contamination of the foundation, walls and rooms of the church building as to render it uninhabitable and make the continued use thereof dangerous."). And here, no business alleged that the coronavirus was present in its property in such a form or quantity as to make the property dangerous and uninhabitable. Even at its peak, buildings in which the coronavirus inevitably amassed — such as hospitals and grocery stores — remained open and inhabitable. Indeed, as the Ultimate Hearing Solutions businesses[9] acknowledge, whether the coronavirus was present in their properties would have made no difference: the closure orders applied to nonessential businesses across the board, regardless of the presence of the virus on the businesses' properties.[10]

---

[9] The Ultimate Hearing businesses are Ultimate Hearing Solutions II, LLC, Ultimate Hearing Solutions III, LLC, Ultimate Hearing Solutions IV, LLC, Ultimate Hearing Solutions V, LLC, and Ultimate Hearing Solutions VI, LLC.

[10] Boulevard Carroll Entertainment Group, Inc. ("Boulevard Carroll"), argues that its policy's provision of communicable disease coverage — which it concedes does not apply here — necessarily means that a virus can cause damage. But whether a virus can cause damage is a separate issue from whether the coronavirus did cause damage here. No business, including Boulevard Carroll, pled facts sufficient to suggest that it did.

At oral argument, Boulevard Carroll stated that it should have, at least, been given leave to amend its complaint to correct any pleading deficiencies. We need not reach this issue, however, because Boulevard Carroll forfeited it. Boulevard Carroll did not move for leave to amend before the District Court, and it

Toppers and 1 S.A.N.T. argue that we should ignore the "period of restoration" language in the policies. They say, respectively, that language is relevant only when coverage may be prematurely terminated or when a repair is needed. But that is not what the policies say. Rather, the policies provide that the insurers "will pay for the [losses the businesses] sustain due to the necessary 'suspension' of [their] 'operations' <u>during the 'period of restoration'</u>." J.A. 1865 (emphasis added); <u>see also</u> Toppers App. 55 (using the same language). By providing business income and extra expense coverage only during the period of restoration, the plain language of the policies makes the period of restoration language relevant to any business income or extra expense claim. We must look to the text of the policies and when that text is clear, as it is here, enforce that language as written. <u>Am. Auto. Ins. Co.</u>, 658 F.3d at 321; <u>Cypress Point Condo. Ass'n</u>, 143 A.3d at 280. We therefore must consider the period of restoration language.

Finally, the businesses argue that, at the very least, the policy language is ambiguous. The Eye Care Center of New Jersey, PA ("Eye Care"), and In The Park Savoy Caterers LLC

---

failed to develop the argument adequately in its opening brief. See <u>Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.</u>, 877 F.3d 136, 145 (3d Cir. 2017) ("To be preserved, all arguments must be supported specifically by 'the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' As a result, we have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing." (quoting Fed. R. App. P. 28(a)(8)(A)); <u>Doeblers' Pa. Hybrids, Inc. v. Doebler</u>, 442 F.3d 812, 821 n.10 (3d Cir. 2006) (noting that "passing and conclusory statements do not preserve an issue for appeal").

40

and In The Park Chateau Caterers LLC (together, "Park Caterers"), in particular, argue that because some courts have found physical loss or damage in purportedly similar circumstances, the phrase "physical loss of or damage" must be ambiguous.  We are unconvinced.  Pennsylvania law rejects the idea that differing outcomes necessarily means that policy language is ambiguous.  See Madison Constr. Co., 735 A.2d at 106–08 (applying Pennsylvania law) (finding the definition of "pollutant" "clear[] and unambiguous[]" despite "the wide divergence of viewpoints among [] jurisdictions" on similar issues); Lower Paxton Twp. v. U.S. Fid. & Guar. Co., 557 A.2d 393, 400 n.4 (Pa. Super. Ct. 1989) ("reject[ing]" the contention that "where a provision in an insurance policy has been construed in different ways by the various courts that have considered it, this alone mandates that we find the provision ambiguous").  And under New Jersey law, which governs Eye Care's and Park Caterers' claims, there is no split in authority: the Appellate Division has uniformly held that losses caused by the closure orders are not physical losses.  Under the facts here, the policies unambiguously do not provide coverage because there has been no physical loss or damage.  To find ambiguity in these cases would require us to "distort the meaning of the [contractual] language or resort to a strained contrivance" of the policies, see Madison Constr. Co., 735 A.2d at 106, which we decline to do.

For all these reasons, we hold that no business has met its burden to show business income or extra expense coverage under its respective policy.[11]

---

[11] Toppers attempts to distinguish itself by arguing that it seeks not coverage for lost profits but for continuing operating expenses.  But under Toppers's policy, continuing operating

41

B.

Several businesses also seek civil authority coverage.[12] To establish coverage under the civil authority provisions, the businesses must demonstrate physical loss or damage to a property other than the insured premises and that an action of civil authority prohibited access to the insured premises because of that loss or damage. The businesses have not met either requirement.

No business alleged that a property other than the insured premises was damaged or suffered a physical loss or that an action of a civil authority prohibited access to the insured premises because of loss or damage to another property. Indeed, the closure orders were issued not in response to property loss or damage but to mitigate health risks to the public and slow the spread of COVID-19 by limiting person-to-person exposure. Even more fundamentally, the closure orders did not prohibit access to the businesses' properties. The businesses remained physically accessible; the closure orders merely prohibited certain uses of the buildings. See Philadelphia Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (applying Pennsylvania law) (finding no civil authority coverage where the civil authority

---

expenses are a part of business income and require physical loss. Like the other businesses, Toppers has failed to show physical loss; it therefore is not entitled to coverage for its continuing operating expenses.

[12] The businesses in Nos. 20-3124, 20-3594, 21-1038, 21-1039, 21-1106, 21-1107, 21-1109, 21-1175, 21-1240, and 21-1294 raise the issue of civil authority coverage on appeal.

grounded airplanes, which "may have temporarily obviated the need for Plaintiff's parking services" but "did not prohibit access to Plaintiff's garages and therefore c[ould] not be used to invoke coverage under Plaintiff's [insurance] policy"); see also S. Hosp., Inc. v. Zurich Am. Ins. Co., 393 F.3d 1137, 1141 (10th Cir. 2004) ("We hold that the civil authority provision does not apply because the FAA's order grounding flights did not itself prevent, bar, or hinder access to Southern Hospitality's hotels in a manner contemplated by the policies.").

For these reasons, we further hold that the businesses have failed to establish civil authority coverage. The Court empathizes with the difficulties that the businesses faced during the pandemic. Our role, however, is to determine whether the policies provide coverage for the businesses' losses, and we conclude that there is no coverage under the circumstances here. Because no business has demonstrated coverage under its policy, it is unnecessary for us to determine whether the insurers established that the virus or ordinance and law exclusions bar coverage.[13]

---

[13] Several of the Pennsylvania businesses ask us to certify questions to the Supreme Court of Pennsylvania related to the meaning of "physical loss of or damage" and the applicability of the virus exclusions. We will deny those requests for certification because they do not satisfy the factors set forth in United States v. Defreitas, 29 F.4th 135, 141–43 (3d Cir. 2022).

IV.

For the foregoing reasons, we will affirm the judgments and orders of the District Courts.