**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1042
_____

MINDY DEUTSCH, on behalf of herself and all others similarly situated,
Appellant

v.

D&A SERVICES LLC
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-21-cv-12286)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
April 14, 2023
_____

Before: CHAGARES, Chief Judge, SCIRICA, and AMBRO,
Circuit Judges.

(Filed:  April 18, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Mindy Deutsch filed a lawsuit against D&A Services LLC ("D&A") alleging that D&A violated the Fair Debt Collection Practices Act ("FDCPA") by sending her a misleading debt collection letter. The District Court granted D&A's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and Deutsch appeals. We will affirm.

I.

Because we write primarily for the parties, we recite only the facts essential to our decision.

Deutsch incurred a debt to a non-party credit card company. After she failed to pay it for some time, the credit card company assigned the debt to D&A for collection. D&A sent Deutsch two debt collection letters: the first on June 8, 2020 and the second on July 13, 2020. Deutsch claims that the following language in the June 8, 2020 letter was misleading in violation of the FDCPA:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice[,] this office will provide you with the name and address of the original creditor, if different from the current creditor.

> If you dispute the debt, or any part thereof, or request the name and address of the original creditor in writing within the thirty-day period, the law requires our firm to suspend our efforts to collect the debt until we mail the requested information to you.

2

Appendix ("App.") 31.

D&A refers to the first of these two paragraphs as the "G-Notice," and the second as the "Suspend Collection Language." App. 40. We will use those terms when referring to each paragraph individually, and we will refer to the paragraphs collectively as the "Disputed Language."

The rights and obligations described in the G-Notice are established by 15 U.S.C. § 1692g(a), a provision of the FDCPA requiring a debt collector to provide certain information to a debtor — such as the name of the current creditor and the amount of the debt — in a "written notice" within five days of "the initial communication with a consumer in connection with the collection of any debt." Section 1692g(a) further requires that the written notice inform the debtor that, if she "notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" and mail it to the debtor. 15 U.S.C. § 1692g(a)(4). A debtor may also request "the name and address of the original creditor" in writing within thirty days of receiving the notice, and the debt collector must provide that information by mail. 15 U.S.C. § 1692g(a)(5).

Although the parties dispute whether it does so accurately, the Suspend Collection Language tries to describe rights created by another provision of the FDCPA, 15 U.S.C. § 1692g(b). As explained above, § 1692g(a) gives a consumer the right to request verification of a debt or information on the original creditor within thirty days of receiving a debt collection notice. Section 1692g(b) guarantees that, if a consumer invokes her § 1692g(a) right to request information about a debt, and the consumer

3

invokes this right in writing and within the thirty-day period prescribed by statute, a debt collector must "cease collection of the debt" until it has provided the requested information to the debtor. While a debt collector must describe a debtor's § 1692g(a) rights in its first communication with the debtor, the statute does not require it to provide information about the debtor's § 1692g(b) rights.

Deutsch brought a putative class action alleging that the Disputed Language was misleading, in violation of the FDCPA.[1] See 15 U.S.C. § 1692e (prohibiting debt collectors from making "any false, deceptive, or misleading representation . . . in connection with the collection of any debt."). She alleged that the Suspend Collection Language was misleading because it gave her the incorrect impression that she could suspend collection by disputing all or part of the debt orally or outside the 30-day window, which conflicts with the rights provided by § 1692g(b). As noted above, a debt collector need not inform a debtor of the protections provided by § 1692g(b). But Deutsch's complaint alleges that, even though D&A was not required to inform her of her § 1692g(b) rights, the inclusion of the inaccurate information about her § 1692g(b) rights had the effect of giving her "contrary and inconsistent" information about her rights under § 1692g(a). App. 25.

The District Court granted D&A's motion to dismiss the complaint for failure to state a claim. It concluded that the Disputed Language, read holistically, is not

---

[1] Deutsch's complaint also alleges that certain other aspects of the two collection letters violated the FDCPA, but her brief on appeal addresses only the Disputed Language. She has therefore forfeited her other claims.

4

misleading because it does not suggest that a recipient could suspend collection by orally disputing the debt or disputing the debt outside the statutory 30-day window. Deutsch timely appealed.[2]

## II.

On appeal, Deutsch claims that the District Court lacked jurisdiction to hear her case because she does not have Article III standing to sue over the letter given the Supreme Court's recent decision in TransUnion LLC v. Ramirez, 141 S.Ct. 2190 (2021).[3] Alternatively, she contends that if the District Court had jurisdiction, it erred by concluding that the Disputed Language was not misleading and granting D&A's motion to dismiss for failure to state a claim.

## A.

---

[2] Deutsch has also moved to vacate the District Court's opinion and judgment based on a lack of Article III standing. A motions panel referred her motion for consideration by the merits panel, and we resolve Deutsch's motion to vacate in parallel with our evaluation of her standing argument in her merits brief.

[3] Whenever a possible lack of standing "is brought to the court's attention, whether through a party or through its own discovery, the court is required to resolve the issue." Neiderhiser v. Borough of Berwick, 840 F.2d 213, 216 (3d Cir. 1988). We note, however, that it is irregular for a plaintiff to contest her own standing on appeal. We further note that Deutsch did not bring the standing issue to the attention of the District Court and raised it for the first time on appeal only after the District Court dismissed her claims on the merits. And while Deutsch claims that the TransUnion decision was an intervening development that caused her to call into question her standing during the pendency of the litigation, she could have raised that issue in the District Court: the Supreme Court issued TransUnion on June 25, 2021, only days after Deutsch filed her complaint and months before the District Court issued its order granting D&A's motion to dismiss. We remind counsel that attorneys have "a continuing duty to inform the Court of any development which may conceivably affect an outcome of the litigation." In re Universal Mins., Inc., 755 F.2d 309, 313 (3d Cir. 1985) (quotation marks omitted). That was not done here.

Article III standing is a threshold jurisdictional issue that "may be raised any time during a lawsuit (including for the first time on appeal)." Temple Univ. Hosp., Inc. v. Sec'y United States Dep't of Health & Hum. Servs., 2 F.4th 121, 130 (3d Cir. 2021). We therefore must begin by addressing Deutsch's challenge to Article III standing. We have jurisdiction to determine our own jurisdiction when it is in doubt. United States v. Kwasnik, 55 F.4th 212, 215 (3d Cir. 2022).

In order to invoke the jurisdiction of the federal courts, a plaintiff must have Article III standing, which "requires a showing that the plaintiff has: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." N.J. Bankers Ass'n v. Att'y Gen. N.J., 49 F.4th 849, 855 (3d Cir. 2022) (quotation marks omitted). The requisite injury in fact must be "concrete and particularized." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016). In its recent TransUnion decision, the Supreme Court explained that the requirement of concrete injury means that not all plaintiffs who allege a violation of a statutory right have Article III standing to bring suit over that violation. 141 S.Ct. at 2205. Only some violations of statutory rights — such as those that cause "traditional tangible harms" or "intangible harms" that cause "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" — can give rise to standing. Id. at 2204.

Deutsch argues that she lacks standing to pursue her claims in federal court because she has not alleged a concrete injury sufficient to confer standing under the principles set forth in TransUnion. We disagree. Deutsch has Article III standing to

pursue her claims against D&A because she has adequately alleged that she has suffered a concrete informational injury. "[T]he Supreme Court has repeatedly recognized," even in TransUnion itself, "that an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing." Kelly v. RealPage Inc., 47 F.4th 202, 211 (3d Cir. 2022) (quotation marks and alterations omitted). We have explained that a plaintiff has alleged an informational injury sufficient to give rise to standing if she alleges "(1) the omission of information to which [she] claim[s] entitlement, (2) adverse effects that flow from the omission, and (3) the requisite nexus to the concrete interest Congress intended to protect" when it created a legal entitlement to the information at issue. Id. at 214.

Deutsch alleges an injury that satisfies all three of these elements. She has alleged that the Disputed Language misled her about her rights under § 1692g(a), thereby omitting the accurate information about her § 1692g(a) rights to which she is statutorily entitled. Deutsch also adequately alleges that she suffered an adverse effect from the omission of accurate information from the Disputed Language because it "frustrated [her] ability to intelligently choose [her] response" and "deprived [her] of [her] right to enjoy [the] benefits" provided by the FDCPA. App. 27. Finally, there is a clear nexus between her alleged injury and the interest Congress intended to protect. Congress enacted the FDCPA in response to "abundant evidence of the use of abusive [or] deceptive . . . debt collection practices by many debt collectors." Schultz v. Midland Credit Mgmt., Inc., 905 F.3d 159, 161-62 (3d Cir. 2018). Deutsch's alleged informational injury stems from a purportedly deceptive debt collection practice and aligns with Congress's goal of

7

"eliminat[ing] abusive practices by debt collectors." Id. She has therefore alleged an informational injury and has standing to pursue her claims.[4]

B.

Since we have concluded that Deutsch has standing to bring an FDCPA lawsuit against D&A, we may address the merits of the District Court's decision granting D&A's motion to dismiss. We review the District Court's grant of a motion to dismiss de novo, "accept[ing] the factual allegations in the complaint as true, draw[ing] all reasonable inferences in favor of the plaintiff, and assess[ing] whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face." Wilson v. USI Ins. Serv. LLC, 57 F.4th 131, 140 (3d Cir. 2023) (quotation marks omitted).

In determining whether a debt collection communication is false, deceptive, or misleading in violation of the FDCPA, we "analyze[] [the communication] from the perspective of the least sophisticated debtor." Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006). This "least sophisticated debtor" standard is a lower bar than reasonableness — "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." Id. But although this standard protects naïve or unsophisticated consumers, it also "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of

_____

[4] Accordingly, the District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and our appellate jurisdiction to review the District Court's decision is authorized by 28 U.S.C. § 1291.

8

reasonableness and presuming a basic level of understanding and willingness to read with care." Wilson v. Quadramed Corp., 225 F.3d 350, 354-355 (3d Cir. 2000). Moreover, "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety," Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008), so we read debt collection communications holistically when assessing whether they are false, deceptive, or misleading.

The District Court concluded that the Disputed Language was not false, deceptive, or misleading, and we agree with the District Court. Deutsch argues that the Suspend Collection Language is misleading because it is susceptible to more than one interpretation, one of which conflicts with § 1692g. She contends that the Suspend Collection Language can be read to inaccurately suggest that a debtor could suspend collection by requesting validation of all or part of the debt orally or outside the 30-day window provided by the statute. But we do not read the Suspend Collection Language in isolation. Instead, we read it in connection with the G-Notice that accompanies it. Even for the least sophisticated debtor, the G-Notice eliminates any ambiguity: it explains that a debtor who wishes to avail herself of her statutory right to validation of a debt must request validation in writing and within 30 days of receiving a collection notice. The Disputed Language therefore does not violate the FDCPA, and we agree with the District Court's decision to dismiss Deutsch's claims.

III.

For the foregoing reasons, we will affirm the judgment of the District Court. Because we have concluded that Deutsch has standing, we also deny her motion to vacate

9

the District Court's opinion and judgment.