**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3711-20

THE PLASTIC SURGERY
CENTER, P.A., JOT
MANAGEMENT, LLC, d/b/a
SYCAMORE MEDICAL
MANAGEMENT, and
THE WOODS O.R., INC.,
d/b/a THE SURGERY CENTER
FOR OUTPATIENT SURGERY,

     Plaintiffs-Appellants,

v.

THE HANOVER INSURANCE
GROUP, INC., and
MASSACHUSETTS BAY
INSURANCE COMPANY,
MARSCHIL INSURANCE
AGENCY, INC., d/b/a
NORTHEAST INSURANCE
SERVICES,

     Defendants-Respondents.

_____

Submitted January 19, 2023 – Decided January 12, 2024

Before Judges Accurso, Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1874-20.

Maggs, McDermott & DiCicco, LLC, attorneys for appellants (Michael M. DiCicco, of counsel and on the briefs; Stephanie L. DeLuca, on the briefs).

Finazzo Cossolini O'Leary Meola & Hager, LLC, attorneys for respondents The Hanover Insurance Group, Inc., and Massachusetts Bay Insurance Company (Jeremiah Lynn O'Leary, on the brief).

The opinion of the court was delivered by

VERNOIA, J.A.D.

Plaintiffs The Plastic Surgery Center, P.A. (TPSC), JOT Management LLC d/b/a Sycamore Medical Management (Sycamore), and The Woods O.R., Inc. d/b/a The Center for Outpatient Surgery (TCOPS) (collectively, "plaintiffs"), appeal from a Law Division order granting defendants', The Hanover Insurance Group, Inc. (Hanover) and Massachusetts Bay Insurance Company (Mass Bay) (collectively, "defendants"), motion for summary judgment and dismissing plaintiffs' amended complaint with prejudice.[1] Based on our de novo review of the record on appeal, we affirm.

I.

---

[1]  The amended complaint also included causes of action against Marschil Insurance Agency, Inc., doing business as Northeast Insurance Services. Those causes of action were dismissed by stipulation of the parties.

2

We discern the following undisputed facts from the summary judgment record and consider them in a light most favorable to plaintiffs because they are the parties against whom summary judgment was entered. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

TPSC is a medical practice specializing in plastic, reconstructive, and cosmetic surgery. TCOPS is an ambulatory surgery center owned and operated by TPSC. Sycamore is a management services organization that provides its services to TPSC and TCOPS.

Hanover is a holding company and Mass Bay is an insurance company licensed to do business in New Jersey. Mass Bay issued two successive annual policies to plaintiffs (collectively, "the policy") in exchange for premium payments. The policy covered the period March 8, 2019, to March 8, 2021. Under the policy, Mass Bay agreed to indemnify plaintiffs for certain losses at plaintiffs' thirty-seven insured properties in New Jersey and Pennsylvania under separate Business Income, Extra Expense, and Civil Authority coverage provisions.[2]

---

[2]  Although the policy insures plaintiffs' New Jersey and Pennsylvania properties, the parties do not dispute that New Jersey law governs the interpretation of the policy.

The Business Income provision provides coverage for "the actual loss of Business Income[,]" the insured sustained during a period of suspension of its operations caused "by direct physical loss of or damage to a described premises shown in the Declarations," where the "loss or damage" is "caused by or resulting from any Covered Cause of Loss." The Extra Expense provision provides coverage for "necessary Extra Expense[s]" plaintiffs incurred during a period of restoration of their operations "due to direct physical loss of or damage" to an insured premises "caused by or resulting from a Covered Cause of Loss."

A "Covered Cause of Loss" under the policy includes "risks of direct physical loss[,]" unless the claimed loss is otherwise excluded or limited by a separate provision in the policy. For example, the policy explicitly excludes coverage for loss or damage "caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

The Civil Authority coverage provision provides coverage for business income loss and extra expense as follows:

> (1) When a Covered Cause of Loss causes damage to property other than property at the described premises, [defendants] will pay for the actual loss of Business Income [the insured] sustain[ed] and necessary Extra

4

Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property within one mile of the described premises, provided that both of the following apply:

(a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property;

(b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Pertinent to this appeal, on March 9, 2020, Governor Phillip Murphy issued Executive Order 103, declaring a public health emergency and state of emergency in New Jersey in response to the COVID-19 pandemic.[3] On March 21, 2020, Governor Murphy issued Executive Order 107, which required closure of facilities where personal care services are performed including medical spas at which solely elective and cosmetic procedures are performed.[4] On March 23, 2020, Governor Murphy issued Executive Order 109, which suspended all

---

[3] Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020).
[4] Exec. Order No. 107 (Mar. 21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020).

A-3711-20

elective surgeries and invasive procedures performed on adults and cancelled or postponed indefinitely all elective or invasive procedures already scheduled.[5] Similarly, Pennsylvania Governor Tom Wolf issued March 19 and March 23, 2020 executive orders requiring the closure of all non-life sustaining businesses and effectively prohibiting Pennsylvania hospitals and surgical centers from performing elective medical and surgical procedures.

In response to the executive orders, plaintiffs temporarily suspended certain business operations—elective medical and surgical procedures—at their various locations in New Jersey and Pennsylvania. More particularly, their office and surgical encounters dropped from 2,870 and 941, respectively, in January 2020, to 1,280 and 345, respectively, in April 2020. On March 24, 2021, plaintiffs furloughed 116 employees due to a "slowdown in business" that they attribute to the executive orders and COVID-19. By June 14, 2020, plaintiffs had rehired the furloughed staff.

Plaintiffs filed suit against defendants, seeking a declaratory judgment that they were entitled to coverage under the policy's Business Income, Extra Expense, and Civil Authority provisions for losses allegedly sustained as a result

---

[5] Exec. Order No. 109 (Mar. 23, 2020), 52 N.J.R. 827(a) (Apr. 20, 2020).

A-3711-20

of the presence of COVID-19 at their insured premises in New Jersey and Pennsylvania and the restrictions on the operations at those premises under the executive orders.

Defendants filed an answer denying plaintiffs' claimed entitlement to coverage under the policy. Defendants' answer asserted affirmative defenses, including: plaintiffs are not entitled to coverage under the Business Income and Extra Expense provisions because plaintiffs did not suffer a direct physical loss of or damage to covered property; the executive orders did not trigger coverage under the Civil Authority provision; and any claimed coverage under the policy is otherwise excluded under the virus exclusion.

Defendants later moved for summary judgment, arguing plaintiffs are not entitled to relief as a matter of law because the policy does not provide coverage for plaintiffs' alleged causes of loss. Defendants argued: plaintiffs had not suffered a direct physical loss of or damage to their property such that they are entitled to coverage under any of the policy's provisions; neither COVID-19 nor the executive orders resulted in any direct physical loss of or damage to plaintiffs' properties within the plain language of the policy; and plaintiffs' alleged losses do not fall within the policy's provisions or are otherwise excluded from coverage under the policy.

Plaintiffs opposed the motion, arguing they established facts supporting their entitlement to coverage under the Business Income, Extra Expense, and Civil Authority provisions that is not barred by the virus exclusion. Plaintiffs argued they had suffered a "physical loss" of the insured premises by virtue of the presence of COVID-19 and as a result of the executive orders. Plaintiffs also alleged they are otherwise entitled to coverage under the Civil Authority provision because discovery would establish the presence of COVID-19 at the properties, or within one mile of them, that resulted in direct physical loss of or damage to the properties and required the closure or curtailment of plaintiffs' operations. Plaintiffs also argued the virus exclusion in the policy is unenforceable on the grounds of regulatory estoppel.

Following argument, the motion court found that under the policy's plain language, there is coverage only for direct physical loss of or damage to the insured premises under the policy's Business Income and Extra Expense provisions, and plaintiffs had not sustained such damage or loss because plaintiffs' business operations continued at their properties, with the limited exception of elective surgical and medical procedures. The court further found that even if plaintiffs could prove a direct physical loss of or damage to their properties due to the presence of COVID-19 on their premises, the policy's plain

8

language states there is no coverage under the virus exclusion. The court did not expressly address plaintiffs' regulatory estoppel argument. The court granted defendants' motion for summary judgment and dismissed plaintiffs' complaint with prejudice. This appeal followed.

## II.

Our review of an order granting a summary judgment motion is de novo. Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (citing Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021)). We apply the same standard as the trial court and determine whether the record shows "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting R. 4:46-2(c)). To determine whether there are genuine issues of material fact, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the

non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill, 142 N.J. at 540).

When "interpreting insurance contracts, we first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). The policy must "be enforced as written when its terms are clear" so the "expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (citations omitted).

We nevertheless recognize that insurance policies are generally "contract[s] of adhesion between parties who are not equally situated." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 215 (2017) (quoting Nav-Its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118 (2005) (alteration in original)). Thus, where an insurance policy is ambiguous, courts construe the terms in favor of the insured. MAC Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 18 (App. Div.) (citation omitted), certif. denied sub nom, MAC Prop. Grp. LLC v. Selective Fire & Cas. Ins., Co., 252 N.J. 258 (2022).

10

A genuine ambiguity arises when "'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage,'" Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 256 (App. Div. 2023) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)), and "when 'the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinction, is obscured by fine print, or requires strenuous study to comprehend,'" ibid. (quoting Zacarias, 168 N.J. at 601). The reasonable expectations of the parties are of no moment where the terms of the policy are unambiguous. Oxford Realty Grp. Cedar, 229 N.J. at 212; see also Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) ("[w]hen the terms of an insurance contract are clear, it is the function of a court to enforce it as written").

By extension, "[e]xclusions in insurance contracts 'are presumptively valid and will be given effect if [they are] 'specific, plain, clear, prominent, and not contrary to public policy.'" MAC Prop. Grp. LLC, 473 N.J. Super. at 35 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). "'The basic notion [is] that the premium paid by the insured does not buy coverage for all . . . damage but only for that type of damage provided for in the policy.'" Id. at 19 (quoting Weedo, 81 N.J. at 237). Limitations on coverage "designed 'to

11

restrict and shape the coverage otherwise afforded'" are therefore permissible. Ibid. (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 102 (2009)).

III.

We examine the pertinent provisions of the policy in accordance with the above-mentioned principles. The Business Income provision obligated defendants to compensate plaintiffs for actual loss of business income sustained during a suspension of business operations where the suspension was caused by direct physical loss of or damage to an insured premises resulting from a covered loss. Under the Extra Expense provision, defendants are obligated to compensate plaintiffs for necessary expenses incurred during the period of restoration that resulted from a direct physical loss of or damage to an insured premises.

Under the Civil Authority provision, defendants are obligated to compensate plaintiffs for the loss of business income and necessary extra expense caused by civil authority that prohibited access to an insured premises as the result of the direct physical loss of or damage of other properties within one mile of the insured premises resulting from a covered cause of loss at the other properties. As noted, the policy excluded coverage for loss or damage "caused directly or indirectly" by "[a]ny virus, bacterium or other

microorganism that induces or is capable of inducing physical distress, illness or disease."

On appeal, plaintiffs argue the motion court erred by granting summary judgment because plaintiffs had demonstrated an entitlement to coverage under the Business Income, Extra Expense, and Civil Authority provisions of the policy and that they had sustained a Covered Cause of Loss under the policy. In making their arguments, plaintiffs expressly acknowledge, in accordance with the policy's plain language, that to establish an entitlement to coverage under those provisions they are required to establish "a suspension of [their] business operations . . . caused by direct physical loss of or damage to property at [the] premises . . . or the issuance of a civil authority order." Plaintiffs claim the presence of COVID-19, and the executive orders' prohibition against performing elective procedures, resulted in the direct physical loss of or damage to the property at their premises such that they are entitled to coverage. Plaintiffs also argue the virus exclusion cannot be applied to exclude the coverage because the court granted summary judgment prematurely—that is, before plaintiffs had an opportunity to develop evidence supporting their claim the virus exclusion is unenforceable under the doctrine of regulatory estoppel.

In MAC Property Group LLC, we rejected virtually identical arguments—regarding virtually identical policy provisions—as those asserted by plaintiffs here. 473 N.J. Super 1. We interpreted an insurance policy that provided business income loss coverage where the plaintiff had alleged it suffered losses due to "direct physical loss of or damage to" covered property resulting in a period of suspension of business operations during the period of restoration of the property. Id. at 20. We held that business losses suffered as the result of executive orders barring or curtailing the plaintiff's operations in response to the COVID-19 pandemic did not constitute "direct physical loss of or damage to" the insured property such as to permit or require coverage. Id. at 10. We explained the phrase "direct physical loss of or damage to" property was neither ambiguous nor "so confusing that the average policyholders . . . could not understand that coverage extended only to instances where the insured property has suffered a detrimental physical alteration of some kind, or there was a physical loss of the insured property." Id. at 21-22.

As noted in MAC Property Group LLC, "scores of federal and state appellate-level courts . . . have addressed" claims for coverage for losses due to executive orders limiting or curtailing business operations due to the COVID-19 pandemic under insurance policies providing coverage for "direct physical

loss of or damage" to insured property, and the "overwhelming majority of them have" dismissed the complaints "because the losses were not due to physical loss or damage to their insured premises."  Id. at 26-27; see also Verveine Corp. v. Strathmore Ins. Co, 489 Mass. 534, 542 (2022) (noting that "[e]very appellate court that has been asked to review COVID-19 insurance claims has agreed" that "'direct physical loss of or damage to' property requires some 'distinct, demonstrable, physical alteration of the property'"); see, e.g., Wilson v. USI Ins. Serv. LLC, 57 F.4th 131, 142-43 (3d Cir. 2023) (applying New Jersey Law, and finding COVID-19 executive orders limiting or curtailing operation of an insured's business did not result in a "direct physical loss of or damage" to the insured's property because the orders were not issued in response to physical damage to the property and "[t]he propert[y] could certainly be used and inhabited, just not in the way the business[] would have liked").

Applying what we determined was the plain and ordinary meaning of the phrase "direct physical loss of or damage to property," we explained that because New Jersey has "adopted a broad notion of the term 'physical[,]'" when the word is paired with another word, e.g. "'physical injury,'" "the resulting term means a 'detrimental alteration[],' or 'damage or harm to the physical condition of a thing,'" MAC Prop. Grp. LLC, 473 N.J. Super. at 20.  We concluded the

plaintiffs were not entitled to coverage because they had failed to show COVID-19 physically damaged their equipment or property on the insured premises, or that the presence of COVID-19 rendered the insured premises uninhabitable, and therefore the plaintiffs failed to establish they suffered a direct physical loss of or damage to their property under the plain and unambiguous language of the policy. Id. at 23.

Here, plaintiffs' arguments fail for the same reasons we rejected the claims in MAC Property Group LLC. The uncontroverted material facts establish plaintiffs have not, and cannot, show they suffered any "direct physical loss or damage" to their property such that they are entitled to coverage under the Business Income, Extra Expense, or Civil Authority provisions of the policy. It is undisputed the executive orders did not require that plaintiffs cease operations completely, or render the insured premises uninhabitable, and instead they resulted only in a curtailment of plaintiffs' normal business operations.

Plaintiffs claim they suffered a "physical loss" and damage because the "physical presence of COVID-19" did not allow use of their businesses for elective medical procedures for a finite duration. As we have explained, for plaintiffs to be entitled to coverage under the policy language, "the loss itself must be a 'direct physical' loss, clearly requiring a direct, physical deprivation

16

of possession" and a partial curtailment of the of use of the premises "'without any physical alteration [to the premises] to accompany it'" does not amount to such. MAC Prop. Grp. LLC, 473 N.J. Super. at 26 (alteration in original) (quoting Verveine Corp., 489 Mass. at 545); see also Wilson, 57 F.4th at 142-43. Therefore, as a matter of law, plaintiffs are not entitled to coverage under the Business Income or Extra Expense provisions of the policy because the material facts do not reflect that their premises were directly, physically altered such that they suffered a direct physical loss of or damage to their property within the policy's plain language.

In MAC Property Group LLC, we also considered a claim for coverage under a civil authority provision that is essentially identical to the provision at issue here. 473 N.J. Super. at 27-30. We found no coverage under the provision because it provided coverage where the civil authority "prohibited [the plaintiff from] access to the insured premises," and we explained the Governor Murphy's executive orders did not prohibit access to the insured premises but instead only restricted business activities at the premises. Id. at 30. Thus, because the plaintiff alleged that the executive orders only restricted its business activities, and did not prohibit access to its insured premises, we did not find the civil authority provision provided coverage. Ibid. So too here.

In pertinent part, the Civil Authority provision in plaintiffs' policy provides coverage where the exercise of civil authority "prohibits access to the described premises due to direct physical loss of or damage to property within one mile of the described premises." The undisputed facts establish the executive orders did not impose such a prohibition and did not bar access to plaintiffs' insured premises. Rather, the executive orders permitted access to plaintiffs' insured premises and limited only the procedures that could be performed following access. Moreover, there is no evidence the executive orders were issued "due to direct physical loss of or damage to property within one mile of the [plaintiffs' insured] premises" as is required for coverage under the Civil Authority provision. Plaintiffs are therefore not entitled to coverage under the Civil Authority provision of the policy.

We recognize plaintiffs' claim they were unable to complete their planned discovery of information from the New Jersey Department of Banking and Insurance concerning plaintiffs' addition of the virus exclusion to the policy. Plaintiffs had sought the information under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13, and argue the requested information may have supported their contention the virus exclusion is unenforceable under the doctrine of regulatory estoppel. See MAC Prop. Grp. LLC, 473 N.J. Super. at

A-3711-20

33 (rejecting plaintiff's claim the doctrine of regulatory estoppel barred an insurer carrier from enforcing a virus exclusion barring coverage for business losses suffered as a result of COVID-19). We find it unnecessary to address plaintiffs' contention summary judgment was awarded prematurely because it was not afforded the opportunity to obtain the information, because plaintiffs otherwise failed to present evidence establishing an entitlement to coverage under the policy provisions under which they sought coverage. Stated differently, we need not address the validity of the virus exclusion because plaintiffs failed to demonstrate an entitlement to coverage in the first instance.

Plaintiffs' remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3711-20